UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SYDNE L. HUDSON,               )
                               )
            Plaintiff,         )
                               )
      v.                       )   No.  4:05CV1096 FRB
                               )
KELLY SERVICES,                )
                               )
            Defendant.         )

## MEMORANDUM AND ORDER

Presently pending before the Court is defendant Kelly Services' Motion for Summary Judgment (filed April 17, 2006/Docket No. 40) and plaintiff Sydne L. Hudson's Motion for Judgment (filed April 17, 2006/Docket No. 42). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Sydne L. Hudson brings this cause of action, pro se, alleging that defendant Kelly Services unlawfully discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, et seq., by removing her from and/or not authorizing her for a temporary employment assignment as a data processing clerk for its client, Blue Cross Blue Shield, on account of her race. Defendant now moves for summary judgment arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Plaintiff has responded to defendant's motion and also separately moves for judgment requesting that judgment be entered

without a trial.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before it shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. <u>Id.</u> The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. <u>Celotex</u>, 477 U.S. at 324. Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." <u>New England Mutual Life Ins. Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir. 1977).

In cases alleging employment discrimination, summary judgment should seldom be used and should not be granted unless the evidence cannot support any reasonable inference of discrimination. <u>Keathley v. Ameritech Corp.</u>, 187 F.3d 915, 919 (8th Cir. 1999); <u>Lynn v. Deaconess Med. Ctr.-West Campus</u>, 160 F.3d 484, 486-87 (8th

Cir. 1998). The Court is mindful, however, that there is no "discrimination case exception" to the application of Rule 56, Federal Rules of Civil Procedure, Berg v. Norand Corp., 169 F.3d 1140, 1144 (8th Cir. 1999); and, as such, employment discrimination cases are not immune from summary judgment. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006).

**I. Evidence Before the Court on the Motion**

Viewed in a light most favorable to the plaintiff, the evidence before the Court shows as follows:

Defendant Kelly Services is a company that provides temporary staffing services to its clients. In early November 2004, plaintiff submitted an employment application to Kelly Services to be assigned as a temporary worker to Kelly Services' clients. Plaintiff is African American. Upon successfully completing a preliminary typing and data processing test on November 12, 2004, plaintiff's application to be placed as a temporary employee was accepted by Brandi Matheis, a supervisor employed by defendant. Ms. Matheis explained to plaintiff, and plaintiff understood, that to be eligible to be placed as a temporary employee, plaintiff would have to pass a drug test and background check. Plaintiff thereafter submitted to such testing and examination.

During plaintiff's visit with Ms. Matheis on November 12, 2004, Ms. Matheis informed plaintiff that one of Kelly Services' clients, Blue Cross Blue Shield (BCBS), was interviewing potential

employees for a temporary project which was scheduled to begin on or about November 22, 2004. Ms. Matheis informed plaintiff that BCBS was seeking five temporary workers for the project and that the project was expected to last approximately ten weeks. Ms. Matheis advised plaintiff, and plaintiff understood, that BCBS would interview the potential temporary employees and make the decision as to whom it would hire for the project.

On Wednesday, November 17, 2004, plaintiff interviewed with Janith Copeland, an employee of BCBS. During this interview, Ms. Copeland informed plaintiff that the temporary assignment would begin with training on Monday, November 22, 2004. Ms. Copeland provided details as to the length of training and the schedule upon which the work was to be performed. At the conclusion of the interview, plaintiff believed that she had been hired by BCBS. Plaintiff then telephoned Ms. Matheis at Kelly Services and informed her that she was hired by Ms. Copeland and asked if her drug test and background check had been completed. Ms. Matheis responded that they had not and informed plaintiff that she would telephone plaintiff upon receipt of such results.

Kelly Services received plaintiff's background check on November 18, 2004. Plaintiff's drug test results were available to Kelly Services sometime on November 16, 2004.

Ms. Copeland interviewed six employees from Kelly Services for the five temporary positions available at BCBS. Ms. Copeland determined to select the five persons other than plaintiff

for the temporary positions available at BCBS and communicated this decision to Kelly Services. Ms. Copeland based her hiring decision on her determination that the other five persons were better qualified for the positions than plaintiff. Race played no factor in BCBS's hiring decision. Kelly Services provided no input to BCBS as to whom it should select for the positions. At least one of the five persons selected by BCBS was African American.

Prior to November 22, 2004, Kelly Services did not communicate to plaintiff that she had not been selected by BCBS to fill one of the temporary positions.[1]

Plaintiff appeared at BCBS on Monday, November 22, 2004, to begin training for the temporary position for which she believed she had been hired. Six persons from Kelly Services, including plaintiff, were present for training. Neither Kelly Services nor Ms. Copeland was aware that plaintiff was at BCBS. Plaintiff returned to BCBS for training on November 23, 2004. During the course of the day on November 23, 2004, Ms. Copeland learned that

---

[1] In interrogatories answered by Barbara Gass-Horn, Branch Manager at Kelly Services, Ms. Gass-Horn states that Ms. Matheis attempted to call plaintiff by telephone during the evening of Friday, November 19, 2004, and the morning of Monday, November 22, 2004, with respect to BCBS's hiring decision, but was unable to reach plaintiff and was unable to leave a message inasmuch as no answering machine was operating. (Deft.'s Mot. Summ. Judg., Exh. B.) Ms. Gass-Horn does not identify the source of this information, nor how she has personal knowledge of such. Nevertheless, the undisputed evidence before the Court shows that subsequent to plaintiff's telephone call to Ms. Matheis upon the conclusion of her interview with Ms. Copeland on November 17, 2004, there was no communication between plaintiff and Kelly Services prior to November 22, 2004.

plaintiff had appeared at BCBS for training.  Upon this discovery, Ms. Copeland telephoned Kelly Services and requested that plaintiff be informed at the end of the day that she had not been selected for the assignment.

During the evening of November 23, 2004, plaintiff received a message from her mother that Ms. Matheis had telephoned to inform her that training had been cancelled at BCBS for the following morning.  At approximately 8:30 a.m. on November 24, 2004, Ms. Matheis telephoned plaintiff and informed her that she was not authorized to work at BCBS.  During this conversation, Ms. Matheis informed plaintiff that BCBS had not selected plaintiff for the position; that plaintiff could not begin work with BCBS until Kelly Services authorized her to do so; and that Ms. Matheis had attempted to contact plaintiff to tell her that she was not authorized to begin employment with BCBS, but was unsuccessful. Plaintiff expressed her confusion to Ms. Matheis given her belief that Ms. Copeland hired her for the job; and then expressed her humiliation and frustration given her attendance at two days of training for a position for which she had not been hired.  Ms. Matheis informed plaintiff that another Kelly Services' client had a position available into which plaintiff could be placed. Plaintiff declined this offer and resigned her employment with Kelly Services.

Kelly Services paid plaintiff the full rate of pay for the two days of training she attended at BCBS on November 22 and

23, 2004.

Prior to November 2004, plaintiff had periodically worked for Kelly Services as a temporary employee, with her most recent employment to be in January 2004. During her previous employments with Kelly Services, plaintiff did not personally experience or observe any discriminatory animus exhibited by Kelly Services directed to any of its temporary workers.

Plaintiff believes that Kelly Services removed her from and/or did not authorize her for a temporary position at BCBS because of her race. Plaintiff admits that she has no facts or evidence to support this belief other than that she was removed from training at BCBS instead of a Caucasian employee.

**II. Discussion**

Title VII of the Civil Rights Act prohibits an employer and/or employment agency from discriminating against any individual in the terms and conditions of her employment, or in the failure to refer for employment, on the basis of that individual's race. 42 U.S.C. § 2000e-2(a), (b). To survive a defendant's motion for summary judgment on a claim of race discrimination, a plaintiff may rely on direct evidence of discrimination showing a specific link between the alleged discriminatory animus and the challenged decision, or, if such evidence is lacking, she may present evidence creating the requisite inference of unlawful discrimination through the analysis prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Griffith v. City of Des Moines, 387 F.3d 733, 736

(8th Cir. 2004). Inasmuch as the record fails to show any direct evidence of discrimination, the Court must determine whether sufficient evidence exists to create an inference of unlawful discrimination in defendant's employment decision.

Plaintiff must first establish a prima facie case of race discrimination. McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case in the circumstances of this case, plaintiff must demonstrate that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; and 3) the adverse employment action occurred under circumstances which create an inference of unlawful discrimination. Id.; Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995) (elements of prima facie case vary depending upon circumstances of the case). If plaintiff can establish a prima facie case, the burden shifts to the employer-defendant to produce evidence that its adverse employment action was for a legitimate, non-discriminatory reason. McDonnell Douglas, 411 U.S. at 802. Once the employer-defendant satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate that the reason provided by the defendant is pretext for unlawful discrimination. Griffith, 387 F.3d at 736-37. At all times, the ultimate burden of persuasion rests with the plaintiff to show that she was unlawfully discriminated against on account of her race. Davis v. KARK-TV, Inc., 421 F.3d 699, 704 (8th Cir. 2005); Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107-08 (8th Cir. 1998).

A.   Plaintiff's Prima Facie Case

Defendant argues that plaintiff cannot meet her burden of establishing a prima facie case of race discrimination inasmuch as plaintiff cannot show she suffered an adverse employment action or that the circumstances surrounding the determination not to place plaintiff at BCBS give rise to an inference of unlawful discrimination.  For the following reasons, defendant's argument is well taken.

The undisputed evidence before the Court shows defendant Kelly Services not to have played any role in BCBS's determination not to select plaintiff to fill one of its five temporary positions. Prior to plaintiff's interview with BCBS, defendant explained to plaintiff, and plaintiff understood, that the decision as to whom would be selected for such positions rested with BCBS alone.  BCBS determined not to select plaintiff for a position inasmuch as it considered plaintiff not to be as qualified as the other five persons whom it had interviewed.  Plaintiff has presented no evidence demonstrating otherwise.  BCBS received no input from defendant in making this determination.  As such, to the extent BCBS's failure to select plaintiff for a temporary position may constitute an adverse employment action, plaintiff has failed to show that defendant Kelly Services was involved in such action. Further, as set out above, at least one of Kelly Services' employees selected by BCBS for its temporary project was African American.   Although the hiring of a protected employee does not

per se defeat plaintiff's prima facie case of race discrimination, see Rinehart v. City of Independence, Mo., 35 F.3d 1263, 1266 (8th Cir. 1994); contra Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003) (to establish prima facie case, plaintiff must show that similarly situated person, not part of the protected group, was hired instead), the hiring of protected employees is nevertheless probative evidence of a lack of discriminatory intent. Lanear v. Safeway Grocery, 843 F.2d 298, 302 (8th Cir. 1988).

In addition, the undisputed evidence shows that once plaintiff was informed by defendant that she was not selected by BCBS for temporary employment, defendant immediately offered to plaintiff an employment position with another client. Plaintiff refused. As such, the evidence before the Court shows that any subsequent adverse employment action of not being placed in temporary employment occurred at plaintiff's own choosing and not on account of any discriminatory conduct by defendant.

Finally, nothing before the Court shows that at any time did any Kelly Services representative exhibit any racial animus toward plaintiff, ever say anything of a racially discriminatory nature to plaintiff, or say or do anything which would cause plaintiff to believe that she would not be placed in temporary employment, whether with BCBS or any other client, on account of her race. Although plaintiff contends that discrimination is shown by the fact that she was removed from the assignment rather than a Caucasian, a mere statement of belief that she was treated

differently than Caucasian employees is insufficient to permit an inference of discrimination.  Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006).  In order to withstand summary judgment, plaintiff "must substantiate [her] allegations with 'sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.'"  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)); see also Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment."). Plaintiff has failed to present any such evidence here.

In light of the above, plaintiff has failed to demonstrate that defendant caused plaintiff to suffer an adverse employment action or that the failure of plaintiff to be placed with BCBS occurred under circumstances which create an inference of unlawful discrimination. Accordingly, plaintiff has failed to meet her burden of establishing a prima facie case of race discrimination.  Even if the evidence before the Court was sufficient to show that plaintiff had established a prima facie case of race discrimination, defendant nevertheless has articulated legitimate, non-discriminatory reasons for its employment action, and no evidence before the Court shows these reasons to be pretextual.

B.  Defendant's Legitimate, Non-Discriminatory Reasons

The undisputed evidence before the Court shows that

defendant did not authorize plaintiff to be placed at BCBS for temporary employment on account of BCBS's independent determination not to select plaintiff for the position. The undisputed evidence further shows that defendant's removal of plaintiff from training at BCBS came at the request of BCBS and after attempts had been made to inform plaintiff that she had not been selected for temporary employment by BCBS. Plaintiff fails to present any evidence demonstrating that these articulated explanations for any perceived adverse employment actions constitute pretext for discrimination. Indeed, no evidence before the Court shows that race played any role in defendant's removal of plaintiff from training for a position for which she had not been selected nor authorized to perform. Nor does the evidence show that race played any factor in either BCBS's decision not to select plaintiff for a temporary position or in defendant's failure to authorize such employment on account thereof. Inasmuch as plaintiff has offered no evidence that would support a reasonable inference that defendant's reasons for its employment actions were pretextual, defendant is entitled to summary judgment. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 692 (8th Cir. 2002); Rose-Maston, 133 F.3d at 1110.

### III. Conclusion

In her Summary Brief, plaintiff ably and eloquently states that "[d]iscrimination is harmful to individuals and society itself. It can tear down a society in whole, and this is why there

are United States government agencies to halt the action of biases, and inequalities." (Pltf.'s Summary Brief at p. 20, "Closing Statement.")  In this cause, however, there simply is no evidence that the adverse employment action as alleged by plaintiff was the result of any discriminatory animus.

At all times, plaintiff bears the burden of demonstrating a genuine issue of fact as to whether the employer intentionally discriminated against her on account of her race.  <u>Elmahdi v. Marriott Hotel Servs., Inc.</u>, 339 F.3d 645, 656 (8th Cir. 2003); <u>Thomas v. Runyon</u>, 108 F.3d 957, 960 (8th Cir. 1997).  Plaintiff has failed to meet this burden inasmuch as she has failed to produce any evidence demonstrating that her failure to be placed in temporary employment with BCBS was on account of defendant Kelly Services' unlawful race discrimination.  Defendant should therefore be granted judgment as a matter of law as to plaintiff's claim.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Kelly Services' Motion for Summary Judgment (Docket No. 40) is granted.

**IT IS FURTHER ORDERED** that plaintiff Sydne L. Hudson's Motion for Judgment (Docket No. 42) is denied.

Judgment shall be entered accordingly.

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this  *8th*  day of August, 2006.